IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


MELVIN SHERROD,

    Plaintiff,

vs.                                Case No. 4:10cv102-MP/WCS

DR. STANLEY DRATLER,
NAN JEFFCOAT,
and C. SIMCOX,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a *pro se* prisoner, initiated this civil rights case on March 18, 2010. Doc. 1. Plaintiff was granted leave to proceed *pro se*, doc. 5, and service was directed of Plaintiff's amended complaint, doc. 9. The answer was filed, doc. 43, and a period of discovery was provided. Doc. 49. After discovery, Defendants filed a motion for summary judgment. Doc. 55. Plaintiff was advised of his burden in opposing summary judgment under Fed. R. Civ. P. 56 and N.D. Fla. Loc. R. 56.1. Doc. 57. Plaintiff's response was due on July 28, 2011. Nothing has been received from Plaintiff and, thus, the summary judgment motion is unopposed.

**Allegations of the amended complaint, doc. 9**

Plaintiff alleges that when he was "seen" by Defendant Dr. Dratler on October 9, 2009, Dr. Dratler failed to "conduct any type of physical examination" of Plaintiff. *Id.*, at 5. Plaintiff alleges that he told Defendant Dratler that he had a terminal illness, tuberculosis, a shaving rash, and arthritis, and that he needed medical passes (no work around chemicals, no shaving, low bunk, no bending or heavy lifting) renewed, but Defendant Dratler denied Plaintiff's request, stating there was no documentation in Plaintiff's file indicating the need for the passes. *Id.* Plaintiff further alleges that Defendant Simcox, the health administrator, failed to "take the necessary and appropriate action to remedy" Defendant Dratler's failure. *Id.*, at 6-7. Specifically, Plaintiff alleges that Defendant Simcox failed to "adequately and appropriately investigate" Plaintiff's informal grievance. *Id.*, at 7. Plaintiff's claim against Defendant Jeffcoat, an assistant warden, is based on that same premise, that the Defendant failed to take any action on Plaintiff's grievance appeal concerning Plaintiff's complaint against Defendant Dratler. *Id.*, at 8. Plaintiff seeks declaratory and injunctive relief only.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff

must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

**Undisputed Rule 56 evidence**

Defendant Dratler is a licensed medical doctor, who was employed as the Chief Health Officer at Taylor Correctional Institution from May, 2009, through June, 2010. Doc. 55, Ex. B (Dratler affidavit).  He explains that a "medical pass" is a "written authorization, based on sound medical judgment, from health services to the other institutional offices that will permit an inmate certain relief from a departmental or institutional requirement which affects a special medical problem." *Id.*  Only a physician or clinical associate can prescribe a medical pass, although non-physician healthcare providers (such as nurses) can issue "a temporary pass that will not exceed fourteen days." *Id.*  As a physician, Dr. Dratler's responsibility is to "ensure that any medical pass that was issued was for a documented medical need and that it was issued only for the length of time that the need exists." *Id.*

On October 9, 2009, Dr. Dratler saw Plaintiff in the Chronic Illness Clinic and examined Plaintiff.  Doc. 55, Ex. B (Dratler affidavit).  Plaintiff's "temperature, respiration rate, and blood pressure were all within normal limits." *Id.*  Dr. Dratler also listened to Plaintiff's "heart and lungs and examined his abdomen, extremities and skin." *Id.* Plaintiff's medical records indicated "Plaintiff had a history of asthma and was taking Albuterol to control the condition." *Id.*  "Plaintiff also had a history of issues with his left knee and ha[d] worn a knee brace for many years." *Id.*

During this examination, Plaintiff requested issuance of a "no-shave pass, which is typically issued if an inmate is found to have pseudo folliculitis barbae ('PFB'), which

is a skin condition that causes painful red bumps and pustules on the skin after shaving with a razor." Doc. 55, Ex. B (Dratler affidavit). Dr. Dratler noted that Plaintiff previously had been issued a no-shave pass, and the pass expired just three days earlier on October 6, 2009. *Id.*; *see also* Ex. B2 (doc. 55-2, pp. 13-14). Dr. Dratler reviewed Plaintiff's chart but "could not find any evidence where another provider had diagnosed Plaintiff with PFB based on a physical examination of his face after clean shaving for" several days. Doc. 55, Ex. B (Dratler affidavit). Dr. Dratler "asked Plaintiff to clean shave for a week and then to return to be evaluated for the no-shave pass." *Id.* Dr. Dratler states that if Plaintiff had "returned with ingrown hairs and pustules," he would have issued Plaintiff a no-shave pass. *Id.* Plaintiff, however, "refused to shave," so Dr. Dratler was unable to properly evaluate Plaintiff's need for the pass. *Id.*

Plaintiff also previously had a low bunk pass which expired on October 6, 2009. Doc. 55, Ex. B (Dratler affidavit); *see also* Ex. B2 (doc. 55-2, pp. 13-14). Dr. Dratler explained that "just because he previously had the pass" did not mean that Plaintiff still needed it. Doc. 55, Ex. B (Dratler affidavit). He further clarified that an inmate needs a certain amount of upper body strength and the ability to stand in front of a bunk to climb into the upper bunk. *Id.* If an inmate is in a wheelchair or has other "leg issues preventing him from standing, or if the inmate had injuries or problems in his upper body, such as in the shoulder, arm, elbow, hands, neck or chest," he would properly be issued a low bunk only pass. *Id.* Because "Plaintiff did not present with any of these issues or any problem that would require a low bunk pass," Dr. Dratler did not renew the pass. *Id.*

Plaintiff last had a "no exposure to chemicals pass" issued on January 17, 2007. Doc. 55, Ex. B (Dratler affidavit); *see also* Ex. B2 (doc. 55-2, p. 18). That pass had expired approximately twenty months earlier on January 17, 2008. Ex. B2 (doc. 55-2, p. 18). Plaintiff had a "history of mild asthma" but Dr. Drater found that Plaintiff's asthma was well controlled at that time. Doc. 55, Ex. B (Dratler affidavit). Plaintiff had not suffered an asthma attack in more than two years. *Id.* Furthermore, Plaintiff's medical records did not indicate that Plaintiff had a "specific allergy to bleach or other chemicals." *Id.* Dr. Dratler opined that there is no reason to issue a pass to avoid those "substances unless there is a documented finding that exposure to chemicals will trigger an asthma attack." *Id.* Dr. Dratler noted that Plaintiff had also previously been exposed to tuberculosis and had been treated for such, but Plaintiff never actually had tuberculosis. *Id.* The fact that Plaintiff was treated for exposure to tuberculosis did not mean that Plaintiff required special treatment in the issuance of a no exposure to chemicals pass. *Id.*

Plaintiff previously had a pass for "no bending, pushing, pulling or lifting anything over 20 pounds" that was issued on August 22, 2007. Doc. 55, Ex. B (Dratler affidavit).[1] That type of pass is typically issued when an inmate has severe back problems. *Id.* Review of Plaintiff's records did not reveal any reason Plaintiff "could not lift, push or pull something over 20 pounds." *Id.*

---

[1] Dr. Dratler's affidavit states the pass was for no lifting over 20 pounds, but the handwriting on the pass dated from August 22, 2007, through August 22, 2008, states" "No lifting > 10 lbs. No pushing/pulling." Ex. B2 (doc. 55-2, p. 18). However, prior passes issued from October of 2006 through October, 2007, for "No lifting, pulling, pushing" were for twenty pounds, *Id.*, at 19, and another pass was sisued for December of 2005 through December, 2006. *Id.*, at 20.

Dr. Dratler did issue a pass for Plaintiff so that he could continue to wear a brace on his left knee.  Doc. 55, Ex. B (Dratler affidavit); *see also* Ex. B2 (doc. 55-2, p. 12).  The pass was issued on October 9, 2009, and would expire in one year.  *Id.*  Dr. Dratler averred that he issued the only restrictive pass to Plaintiff that was clinically indicated, and in doing so, he was not deliberately indifference to Plaintiff's medical needs.  *Id.*

Plaintiff was examined on November 3, 2009, by ARNP Pliskin to determine if Plaintiff needed a no-shave pass.  Doc. 55, Ex. B (Dratler affidavit).  Plaintiff was clean shaven and had no facial abnormalities, except for pock marks from previous acne.  *Id.*  "ARNP Pliskin found no evidence of PFB and did not issue a shave pass."  *Id.*

In subsequent medical appointments, Plaintiff has not brought up the need for the denied medical passes.  Doc. 55, Ex. B (Dratler affidavit); Ex. B4 (doc. 55-2, p. 32).  Plaintiff has not suffered an asthma attack, nor has he suffered with any problems from shaving, nor has Plaintiff complained of pain or other problems due to not having the medical passes issued.  *Id.*

Plaintiff wrote an Informal Grievance to Defendant Simcox on October 14, 2009.  Ex. C (doc. 55-3, p. 1).  Plaintiff complained that Dr. Dratler was "unprofessional" and failed to conduct a physical examination of him and that he refused to reissue medical passes for Plaintiff.  *Id.*  Defendant Simcox reviewed Plaintiff's medical chart and responded to Plaintiff's grievance by advising that the chart revealed "no documented medical need for these passes."  *Id.*

Plaintiff then submitted a Formal Grievance to the warden on October 28, 2008.  Ex. C (doc. 55-3, p. 3).  That grievance was responded to by Defendant Jeffcoat, the assistant warden.  *Id.*, at 6.  The response again advised Plaintiff that clinicians found

"no medical necessity for the passes" Plaintiff was requesting and recommended that if Plaintiff experienced additional problems, he could go to sick call to be reevaluated. *Id.*

**Analysis**

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009); *see also* Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977); *see also* Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

Deliberate indifference is a higher standard than negligence, but may be satisfied by something less than actions which were undertaken with an intent to cause harm. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Deliberate indifference is shown by "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by

conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

Medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991), citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). *See also* Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993).  For example, in Estelle, the prisoner received treatment for his back injury (bed rest, muscle relaxants and pain relievers), but complained that more should have been done in the way of diagnosis, such as an X-ray or other tests.  The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  Further, when an inmate has received some medical attention or care and the dispute involves the adequacy of the care, federal courts are reluctant to second guess medical judgments and find an Eighth Amendment violation. Harris v. Thigpen, 941 F.2d 1495, 1507 (11th Cir. 1991).

In this case, Plaintiff has come forward with no evidence to support finding the first element of his claim - a serious medical need.  Plaintiff has not shown that he suffers pain greater than minor discomfort which requires a no shaving pass, a low bunk pass, a no exposure to chemicals pass, or a no lifting, pulling, or pushing pass.  In spite

of Plaintiff's failure to provide any evidentiary support for the first element of this claim, there is no evidence that Defendant Dratler was deliberately indifferent to Plaintiff's medical needs. The undisputed evidence reveals Dr. Dratler examined Plaintiff and thoroughly reviewed Plaintiff's medical records. Finding a medical need for Plaintiff to wear a knee brace, that pass was issued. However, there was no evidence that Plaintiff had a valid and current medical need for the reissuance of the other passes. Moreover, even *if* Defendants Simcox and Jeffcoat could override the medical opinion of the physician who examined Plaintiff, the evidence reveals that each of these officials reviewed Plaintiff's medical records prior to responding to Plaintiff's grievances. Plaintiff received medical care and his disagreement with the decision to re-issue passes is not sufficient, on this record, to support an Eighth Amendment claim. Summary judgment should be granted in favor of the Defendants.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 55, be **GRANTED** and judgment be entered in favor of the Defendants.

**IN CHAMBERS** at Tallahassee, Florida, on August 18, 2011.

    S/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:10cv102-MP/WCS